IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

GALVESTON DIVISION

| | | |
|---|---|---|
| GABRIEL BONEFONT | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. G-07-012 |
| | § | |
| U.S. SHIPPING PARTNERS, L.P., ET AL. | § | |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

On June 30, 2008, the Non-Jury Trial of this cause commenced before this Court with the consent of the Parties pursuant to 28 U.S.C. § 636(c). The Court having considered the evidence and argument of counsel now issues its Findings of Fact and Conclusions of Law.

1. The Court has jurisdiction in this cause pursuant to the Jones Act, 46 U.S.C. § 30104, et seq., and the General Maritime Law of the United States.

2. Plaintiff, Gabriel Bonefont, a licensed seaman with 43 years of experience at sea, was, at the time of the incident giving rise to this personal injury action, a Recertified Boatswain employed by Defendant, USS Transport, LLC (USS Transport), and serving as the temporary replacement for the permanent boatswain aboard the ITB MOBILE, a 690 foot long integrated tug barge, on a voyage from Corpus Christi, Texas, to Port Everglades, Florida.

3. As boatswain, Bonefont was the supervisor of the deck crew; Bonefont had served as a boatswain for approximately 20 years and was, therefore, knowledgeable of his duties and those of the deck crew, including, but not limited to, the moving and positioning of mooring lines.

4. Bonefont had signed on to the ITB MOBILE on September 14, 2006, for a 60 day assignment, but after it was discovered that his Merchant Mariner's Document was set to expire on October 12, 2006, thereby rendering him unfit for duty, he was informed by the Captain, James P. Crane, on September 25, 2006, that arrangements had been made to replace him upon docking in Port Everglades on the morning of September 30, 2006.

5. On the morning of Setpember 29, 2006, the weather was fair, the seas were calm and the vessel was making 14.3 knots without any roll; according to Bonefont it was a "beautiful day."

6. At approximately 9:45 a.m. on September 29, 2006, while still about 17 hours out of Port Everglades, the Chief Mate, Sam Train, informed Bonefont that the ITB MOBILE had been issued a docking change requiring it to dock port-side and told Bonefont to move the breast line, which Bonefont had flaked out on the starboard deck the day before, to the port deck in preparation for docking the next morning.

7. Bonefont formed the impression that the Chief Mate wanted him to move the breast line at once, so rather than risk any disciplinary charges, Bonefont decided that he and fellow deck crew members would begin the task at that time; crew member James "Ted" McCormick who assisted in moving the line had no recollection of being rushed.

8. The breast line on the ITB MOBILE was a light-weight synthetic "Spectra" line which was in good condition; it was about 200 feet long and it weighed about 140 pounds (.7 pounds per foot).

9. Moving the breast line from the starboard deck to the port deck is a very basic and easy task which may be safely accomplished by either walking the line around the flat deck of

the bow or passing it over numerous pipes attached to the deck of the vessel; the job, which can be performed by one deck hand if necessary, takes only about 15 minutes to complete and, according to McCormick, the deck hand won't "even break a sweat doing it."

10. Bonefont opted to move the breast line over the pipes by having a deck hand use a forward starboard capstan to pull the line from starboard to port and then feed the slack to Bonefont who carried the eye at the end of the breast line on his left shoulder as he crossed over the pipes.

11. As Bonefont neared the area of the port deck where the breast line was to be flaked out, he came to a large pipe about 10 to 14 feet in front of him over which the breast line had to be passed.

12. Although McCormick was on his way around the deck to be handed the breast line, which was the proper and safest way to move the breast line over the piping, Bonefont unilaterally decided to heave the breast line over the large pipe even though heaving of the breast line over the pipe was an unsafe method of moving it.

13. In his effort to heave the breast line, Bonefont lifted his left foot and braced the left side of it on an elevated pipe flange for leverage; this was clearly an unsafe method of heaving the breast line, and was in violation of USS Transport's safety policies against utilizing an obvious trip hazard created by standing on pipes.

14. When Bonefont used both hands to throw the breast line from his left shoulder his left foot slipped off the flange, he lost his balance and he fell; as a result of the fall, Bonefont claimed to have injured his right knee, elbow and shoulder.

15. Even Bonefont conceded, at his deposition, that "I should have gone with my 43 years of experience and walked the whole line all the way around" and that he would not now "do it again" by heaving the breast line as he did on September 29, 2006.

16. Bonefont's method of attempting to heave the breast line by using the flange for leverage was a clear act of negligence for which Bonefont is solely responsible.

17. There is no need to have two breast lines aboard the ITB MOBILE since moving the breast line from side to side on the vessel is a simple and routine task; therefore, USS Transport was not negligent and the ITB MOBILE was not rendered unseaworthy for having only one breast line in service.

18. Since moving the breast line from one side of the ITB MOBILE to the other side was a task capable of being performed by a single deck hand, the vessel's complement of three full time deck hands and one part-time deck hand was sufficient; therefore, USS Transport was not negligent and the ITB MOBILE was not unseaworthy in this regard.

19. The existence of the flange and the pipes on the deck of the ITB MOBILE were required for the vessel to properly function as an integrated tug barge moving cargo along the coastline and they could easily be worked around without causing any risk of injury to crew members; therefore, their existence and configurations did not render the ITB MOBILE unseaworthy. Cumberland v. Isthmian Lines, Inc., 282 F.Supp. 217, 222 (E.D. La. 1967)

20. The ITB MOBILE provided a reasonably safe to place to work in regard to any condition of the vessel which was in any way related to the incident made the basis of this litigation. Shields v. United States, 175 F.2d 743, 744 (3$^d$ Cir. 1949)

21. Bonefont has failed to prove any act of negligence on the part of USS Transport, his employer. <u>Mitchell v. Trawler Racer, Inc.</u>, 362 U.S. 539 (1960)

22. Bonefont has failed to prove that the ITB MOBILE or any of its relevant appurtentances were not reasonably fit for their intended use. <u>Id</u>.

23. In accordance with the Findings of Fact and Conclusions of Law, Bonefont is entitled to no relief by virtue of his complaint.

**DONE** at Galveston, Texas, this _____21st_____ day of August, 2008.

_____
John R. Froeschner
United States Magistrate Judge